IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Jacob L. Guenther, | Case No. 2:24-cv-03847-RMG-MGB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| W International SC, LLC, | |
| Defendant. | |

Plaintiff filed this employment discrimination case alleging (1) disability discrimination based upon disparate treatment, as well as failure to engage in the interactive process and failure to accommodate in violation of the Americans with Disabilities Act ("ADA") and S.C. Code Ann. § 43-33-350, (2) retaliation based upon requests for accommodation and reports of discrimination in violation of the ADA and Title VII of the Civil Rights Act of 1964 ("Title VII"), and (3) constructive discharge in violation of Title VII and the South Carolina Human Affairs Law, S.C. Code Ann. § 1-13-10 *et seq*.[1] ("SCHAL"). (Dkt. No. 1.) This matter is currently before the Court upon Defendant's Partial Motion to Dismiss. (Dkt. No. 6).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1) and Local Civil Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration. For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss (Dkt. No. 6) should be **GRANTED IN PART AND DENIED IN PART**.

---

[1] The Complaint refers to this statute as the "South Carolina Human Rights Act." (Dkt. No. 1.)

1

## BACKGROUND

According to the Complaint, Plaintiff began working for Defendant as a Welding Student on or about October 30, 2022. (Dkt. No. 1 at 2.) At some point, Plaintiff was promoted to Welder I. (*Id*.) Plaintiff claims that, upon being hired, he informed his supervisor, Jeremy Burton, that he had been diagnosed with "ADHD, PTSD, high cholesterol, and high blood pressure." (*Id*.) Plaintiff claims that he requested accommodations for these impairments, and that those accommodations were granted. (*Id*.)

However, Plaintiff alleges that he was discriminated against on account of his disabilities on May 11, 2023, after he "reported a co-worker for using a marijuana vape pen at work." (*Id*.) More specifically, Plaintiff claims that he "was sent home prior to the start of his shift and [was] required to submit to a blood pressure test." (*Id*.) Plaintiff claims that when he "asked why he had to submit to the blood pressure test, he was told 'they were concerned.'" (*Id*.) According to Plaintiff, he was then told that he could not return to work until a doctor released him back to work. (*Id*.) Plaintiff alleges that he "complained of [this] discrimination to the Human Resources Manager, Claire Wessinger, and the Vice President of Human Resources, Michael Arnold [and] was then retaliated against for his complaints when he was suspended without cause on May 11, 2023." (*Id*.)

Plaintiff further claims that he was constructively discharged from his employment with Defendant on May 17, 2023 "for his complaints of discrimination, report of controlled substance, and suspension." (*Id*.) According to Plaintiff, he has suffered permanent medical disabilities and continues to suffer from medical conditions through the present time. (*Id*.) Plaintiff believes that "the reasons given for his termination and loss of employee benefits were a mere pretext for the discrimination against Plaintiff based on his disability and

2

age."[2] (*Id*. at 3.) He claims that he has suffered lost wages, benefits, and employment opportunities, as well as mental anguish, humiliation, loss of enjoyment of life, damage to his reputation, loss of income, and other past and future losses. (*Id*.) Plaintiff therefore claims he is entitled to "injunctive relief and/or civil damages, back wages, plus interest, payment for lost benefits, and reinstatement of benefits and front pay," in addition to "payment of medical bills, payment of damages, attorney fees and costs." (*Id*. at 3–4.)

In light of the foregoing, Plaintiff filed the instant civil action on July 3, 2024. (Dkt. No. 1.) On August 6, 2024, Defendant filed a Partial Motion to Dismiss, seeking dismissal of Plaintiff's disability discrimination claims, constructive discharge claims, and retaliation claim based upon Plaintiff's requests for accommodation.[3] (Dkt. No. 6.) Plaintiff responded to Defendant's motion on August 20, 2024 (Dkt. No. 7), and Defendant replied to Plaintiff's response on August 27, 2024 (Dkt. No. 10). As such, the motion before the Court has been fully briefed and is ripe for disposition.

## **LEGAL STANDARD**

On a motion to dismiss pursuant to Rule 12(b)(6), a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In reviewing a motion to dismiss an action pursuant to Rule 12(b)(6) . . . [a court] must determine whether it is plausible that the factual allegations in the complaint are 'enough to raise a right to relief above the speculative level.'" *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009) (quoting *Twombly*, 550 U.S.

---

[2] The Complaint does not bring any age-based discrimination claims. (*See generally* Dkt. No. 1.)
[3] Plaintiff's claim for retaliation based upon his reports of discrimination is not at issue in Defendant's Partial Motion to Dismiss. (Dkt. No. 6.)

3

at 555). "A plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

For purposes of a motion to dismiss, the district court must "take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "In considering a motion to dismiss, [the court] accept[s] the complainant's well-pleaded allegations as true and view[s] the complaint in the light most favorable to the non-moving party." *Stansbury v. McDonald's Corp.*, 36 F. App'x 98, 98−99 (4th Cir. 2002) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). However, while the court must draw all reasonable inferences in favor of the plaintiff, it need not accept "legal conclusions drawn from the facts, . . . unwarranted inferences, unreasonable conclusions or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999); *Giarratano*, 521 F.3d at 298).

## DISCUSSION

As noted, Defendant argues that the Court should dismiss Plaintiff's claims of: (1) disability discrimination based upon disparate treatment, failure to engage in the interactive process, and failure to accommodate in violation of the ADA and S.C. Code Ann. § 43-33-350; (2) constructive discharge in violation of Title VII and the SCHAL; and (3) retaliation based upon requests for accommodation in violation of the ADA. (Dkt. No. 6.) More specifically, Defendant asserts that Plaintiff failed to administratively exhaust his claims of disability discrimination based on failure to engage in the interactive process and failure

4

to accommodate, retaliation based upon his requests for accommodation, and constructive discharge. (*Id*. at 1–2.) Defendant further asserts that Plaintiff failed to sufficiently plead these claims and failed to sufficiently plead his disability discrimination claim based on disparate treatment. (*Id*. at 2.) Defendant also asserts that Plaintiff's claim for disability discrimination under S.C. Code Ann. § 43-33-350 fails because this statute "provides the South Carolina Protection and Advocacy for People with Disabilities, Inc. the power to pursue legal claims on behalf of disabled individuals," and "no such cause of action exists under these circumstances." (*Id*.) Finally, Defendant contends that Plaintiff's constructive discharge claim under the SCHAL fails for the same reasons as his constructive discharge claim under Title VII. (*Id*. at 2, 7.) The undersigned considers Defendant's arguments, below.

At the outset, Plaintiff concedes to dismissal of his discrimination claims based upon failure to accommodate and failure to engage in the interactive process, as well as his retaliation claim based upon his requests for accommodation. (Dkt. No. 7 at 3, 7.) The undersigned therefore **RECOMMENDS** that such claims should be **DISMISSED**.

Further, Plaintiff's response brief fails to set forth any substantive arguments regarding his disability discrimination claim under S.C. Code Ann. § 43-33-350. (*See generally id*.) In fact, Plaintiff's response brief does not mention this claim at all. (*Id*.) Accordingly, the undersigned **RECOMMENDS** that this claim should be **DISMISSED**, as well. *See, e.g.*, *Jackson v. Cent. Midlands Reg'l Transit Auth.*, No. CV 3:23-138-JFA-PJG, 2023 WL 5757643, at *3 n.3 (D.S.C. June 9, 2023) (noting that plaintiff had abandoned Title VII claim by not responding to defendant's arguments), *adopted*, 2023 WL 5012193 (D.S.C. Aug. 7, 2023); *Ludwick v. Urb. Nirvana, LLC*, No. 2:23-CV-03372-

BHH-MHC, 2023 WL 9065095, at *6 (D.S.C. Dec. 12, 2023) (finding that plaintiff abandoned claim where she did not make any argument regarding the claim in her response in opposition to defendant's motion to dismiss, or in her sur-reply), *adopted*, 2024 WL 38739 (D.S.C. Jan. 3, 2024); *Jones v. Family Health Ctr., Inc.*, 323 F. Supp. 2d 681, 690 (D.S.C. 2003) (noting that a claim not addressed in opposition memorandum had been abandoned); *Sawyers v. United Parcel Serv., Inc.*, C/A No. 1:18-CV-1037, 2019 WL 4305771, at *3 (M.D.N.C. Sept. 11, 2019) (collecting cases showing that "[t]his district and others within the Fourth Circuit agree that failing to respond to an argument constitutes an abandonment of a claim").[4] The undersigned has limited the remaining discussion accordingly.

## I.     Discrimination

The undersigned **RECOMMENDS** that Plaintiff's disability discrimination claim based on disparate treatment should survive Defendant's Partial Motion to Dismiss (Dkt. No. 6). Under Title I of the ADA, employers are prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To establish a *prima facie* claim of disability discrimination under Title I, a plaintiff must prove: "(1) that []he has a disability, (2) that []he is a 'qualified individual' for the employment in question, and (3) that [his] employer discharged [him] (or took other adverse employment action) because of [his] disability." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562,

---

[4] Even if Plaintiff had not abandoned this claim, the law supports dismissal. As Defendant correctly notes, S.C. Code Ann. § 43-33-350 does not provide for a private right to a cause of action under the circumstances presented here, where Plaintiff is bringing a lawsuit against his employer on his own behalf. (*See* Dkt. No. 6 at 13, n.3); *see also* S.C. Code Ann. § 43-33-350.

572 (4th Cir. 2015) (quotation omitted); *see also EEOC v. McLeod Health, Inc.*, 914 F.3d 876, 883 (4th Cir. 2019). Plaintiff is not required to plead a *prima facie* case of disability discrimination at this early stage of the proceedings, but he must allege facts sufficient to state all elements of his claim. *See Twombly*, 550 U.S. at 570.

The first two elements of Plaintiff's discrimination claim based on disparate treatment appear undisputed. (*See generally* Dkt. Nos. 6, 10.) Rather, Defendant argues that Plaintiff cannot plausibly allege that Defendant violated Title I because he failed to adequately plead that he suffered an adverse action on account of his disability. (Dkt. No. 6 at 13–16.) In response, Plaintiff claims that he "has satisfied all three of the prongs of a prima facie case of discrimination based on disability." (Dkt. No. 7 at 7.) For the reasons set forth below, the undersigned agrees with Plaintiff and **RECOMMENDS** that the Court **DENY** Defendant's motion as to this claim.

In support of Plaintiff's disability discrimination claim based on disparate treatment, the Complaint alleges that:

> 12. Upon hire the Plaintiff informed his supervisor, Jeremy Burton, that he was diagnosed with ADHD, PTSD, high cholesterol, and high blood pressure. Plaintiff requested accommodations which were granted.
>
> 13. On or about May 11, 2023, Plaintiff was discriminated against on the basis of his disability when he reported a co-worker for using a marijuana vape pen at work. Subsequently, Plaintiff was sent home prior to the start of his shift and required to submit to a blood pressure test.
>
> 14. When the Plaintiff asked why he had to submit to the blood pressure test, he was told "they were concerned." Plaintiff was then told that he could not return to work until a doctor released him back to work, although he had been placed out of work by the doctor based on his disability. . . .
>
> 16. On or about May 17, 2023, the Plaintiff was constructively discharged from employment, . . . .

(Dkt. No. 1 at 2.)

Based on these allegations, the undersigned finds that Plaintiff has sufficiently alleged an ADA discrimination claim based on disparate treatment. As noted, Plaintiff is not required to plead a *prima facie* case at this early stage of the proceedings and must instead allege facts sufficient to state all elements of his claim. *See Twombly*, 550 U.S. at 570. Here, Plaintiff has alleged that he was diagnosed with high blood pressure, that Defendant ordered him to take a blood pressure test, and that Defendant suspended him pending the results of that blood pressure test. (Dkt. No. 1 at 2.)[5] Construing these allegations in the light most favorable to Plaintiff—as the Court must at this early stage—the Court could reasonably infer that Defendant took an adverse action against Plaintiff because of his disability by suspending him pending the results of his blood pressure test. (*Id.*) As such, Plaintiff has sufficiently pled the third element of his disability discrimination claim based upon disparate treatment and such claim should survive dismissal.

## II.     Constructive Discharge

Turning to Plaintiff's constructive discharge claims, the undersigned **RECOMMENDS** that these claims should be **DISMISSED**. Defendant first argues that Plaintiff failed to exhaust his constructive discharge claims. (Dkt. No. 6 at 3.) Defendant contends that Plaintiff did not properly exhaust such claims because he makes no mention of them in the charge he filed with the Equal Employment Opportunity Commission ("EEOC") before filing this civil action.[6] (*Id.* at 3–7.) Defendant further asserts that such

---

[5] As noted, the first two elements of Plaintiff's disability discrimination claim based on disparate treatment are not in dispute.

[6] Although courts generally do not consider matters outside the pleadings in ruling on a motion to dismiss, *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), the Court may consider documents outside the pleadings without converting a motion to dismiss into one for summary judgment if those documents are "integral to and explicitly relied on in the complaint" and their authenticity is unchallenged. *Copeland v. Bieber*, 789 F.3d 484, 490 (4th Cir. 2015). "In the employment

claims are outside the scope of any claims that would have naturally arisen from an investigation of the allegations contained in Plaintiff's charge. (*Id*.) The undersigned agrees.

The allegations contained in an administrative charge generally limit the scope of any subsequent judicial complaint. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (affirming the district court's dismissal of plaintiff's claims because they were outside the scope of her original charge and were therefore time-barred). To determine whether a claim in an employment-based lawsuit is encompassed in the charge so as to be maintained in a subsequent lawsuit, a court may consider "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint [of discrimination in the charge], and those developed by reasonable investigation of the original complaint [of discrimination in the charge]. . . ." *Id.* (citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976)). This inquiry attempts to strike a "balance between providing notice to employers and the EEOC on the one hand and ensuring plaintiffs are not tripped up over technicalities on the other." *Sydnor v. Fairfax Cnty., Va.*, 681 F.3d 591, 594 (4th Cir. 2012). The administrative-exhaustion requirement exists to provide notice to the employer and an opportunity for conciliation or other action by the EEOC. *Id.* at 593.

Here, Plaintiff's EEOC charge alleges that he was discriminated against based on his disability when he reported a co-worker using a marijuana vape pen and was

---

context, a court may consider an EEOC charge and other EEOC documentation [when considering a motion to dismiss] because such documents are integral to the complaint as Plaintiff necessarily relies on these documents to satisfy the time limit requirements of the statutory scheme." *Pierce v. Office Depot, Inc.*, C/A No. 0:13-CV-3601-MGL, 2014 WL 6473630, at *5 (D.S.C. Nov. 18, 2014) (citing *Williams v. 1199 Seiu United Healthcare Workers East*, C/A No. 12–72, 2012 WL 2923164 at *1 n.1 (D. Md. July 17, 2012)); *see also Adams v. 3D Sys., Inc.*, No. 019-CV-00663-JMC-KDW, 2019 WL 8754875, at *2 (D.S.C. Nov. 26, 2019), *adopted*, 2020 WL 1527056 (D.S.C. Mar. 31, 2020) (same).

9

subsequently "sent home prior to the start of [his] shift and required to submit to a blood pressure test." (Dkt. No. 6-1.) The charge further alleges that Plaintiff was then "told that he couldn't return to work until a doctor released [him] for work" and that he "complained of discrimination based on [his] disability." (*Id.*) The charge alleges that Plaintiff was "retaliated against after [his] complaints" and that "[he] was suspended without cause on 05/11/2023 [and] was terminated 05/17/2023." (*Id.*) The charge states that Plaintiff "therefore believe[d] [he was] discriminated and retaliated against on the basis of [his] disability . . . ." (*Id.*)

Plaintiff's EEOC charge does not, however, state or even insinuate that he was constructively discharged. (*Id.*) Plaintiff did not check the box for continuing action on his EEOC charge, nor does his EEOC charge delineate any kind of harassment or intolerable conditions that could have led to a constructive discharge. (*Id.*) Accordingly, Plaintiff's constructive discharge claims fall outside the scope of his EEOC charge and such claims are therefore procedurally barred. *See McGraw v. Volvo Car USA, LLC*, No. 2:22-CV-04635-BHH-MHC, 2023 WL 10950864, at *6 (D.S.C. Oct. 31, 2023) (finding that constructive discharge claim fell outside scope of plaintiff's charge and was procedurally barred), *adopted*, 2024 WL 959228 (D.S.C. Mar. 6, 2024); *Williams v. Capstone Logistics LLC*, No. 3:19-CV-2374-JMC-PJG, 2020 WL 9209282, at *8 (D.S.C. Dec. 18, 2020) (recommending dismissal of plaintiff's constructive discharge claim for failure to exhaust administrative remedies where his charge made "no reference to, or allegation regarding, his constructive discharge"), *adopted*, 2021 WL 973344 (D.S.C. Mar. 16, 2021); *Karges v. Charleston Cnty. Sheriff's Off.*, No. 2:08-CV-2163-MBS, 2010 WL 3270310, at *10 (D.S.C. Aug. 17, 2010) ("Because constructive discharge is a discrete discriminatory act

10

subject to administrative exhaustion and this claim was not included on Plaintiff's charge of discrimination, this claim must be dismissed for failure to exhaust administrative remedies.").[7]

Regardless, the Complaint fails to set forth factual allegations sufficient to set forth a plausible constructive discharge claim. (*See generally* Dkt. No. 1.) A plaintiff asserting constructive discharge "must establish that [his] working conditions were so intolerable that a reasonable employee would have been compelled to resign." *Evans v. Int'l Paper Co.*, 936 F.3d 183, 194 (4th Cir. 2019); *see also El-Reedy v. Abacus Tech. Corp.*, 273 F. Supp. 3d 596 (D.S.C. 2017) (analyzing SCHAL and Title VII constructive discharge claims under the same legal analysis). Thus, "[i]n order to present a viable claim for constructive discharge in [his] Complaint, Plaintiff must have allegations sufficient to set forth a plausible claim 'on its face' that [he] was subjected to employment practices which were both discriminatory and made [his] working conditions intolerable, thus forcing [him] or inducing [him] to quit." *El-Reedy*, 273 F. Supp. 3d at 603 (citing *Iqbal*, 556 U.S. at 678; *Green v. Brennan*, 578 U.S. 547, 554–55 (2016); *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353–1354 (4th Cir. 1995); *Garrett v. Hewlett–Packard Co.*, 305 F.3d 1210, 1221 (10th Cir. 2002)). Stated differently, "Plaintiff's factual allegation[s] must present a plausible claim that [his] employer's actions were so discriminatory that a reasonable person in [his] position would have felt compelled to resign, and that []he actually did so."

---

[7] In his response to Defendant's motion, Plaintiff seems to suggest that Defendant investigated his constructive discharge claim after being notified of Plaintiff's EEOC charge. (Dkt. No. 7 at 4.) However, Plaintiff provides no further context or support for these allegations. (*Id.*) Even if he did, the undersigned cannot consider any such support on a Rule 12(b)(6) motion. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Regardless, Plaintiff's claims do not change the undersigned's conclusion as to whether Plaintiff's constructive discharge claims were properly exhausted, given the contents of his EEOC charge. (Dkt. No. 6-1.)

*Id.* at 603–04 (citing *Green*, 578 U.S. at 555; *Heiko v. Colombo Sav. Bank F.S.B.*, 434 F.3d 249, 262 (4th Cir. 2006); *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985)).

In this case, Plaintiff's Complaint makes nothing more than conclusory allegations that Plaintiff was constructively discharged. (*See generally* Dkt. No. 1.) The Complaint states only that: "[o]n or about May 17, 2023, the Plaintiff was constructively discharged from employment for his complaints of discrimination, report of controlled substance, and suspension" and "the [] constructive discharge of Plaintiff's employment by the actions of the Defendant, constitutes a violation of a clear mandate of public policy."[8] (*Id*. at 2, 5.) The Complaint provides no further details or facts to support Plaintiff's constructive discharge claims. (*See generally* Dkt. No. 1.)

Plaintiff's conclusory allegations simply cannot support a plausible constructive discharge claim. As noted, the Complaint does not set forth any factual support for Plaintiff's contentions and identifies no actions or statements by Defendant or its employees that could be favorably construed to show harassment or intolerable working conditions sufficient to satisfy the high standard required to state a constructive discharge claim. *See Nnadozie v. Genesis HealthCare Corp.*, 730 F. App'x 151, 162 (4th Cir. 2018) ("The 'intolerability' standard governing constructive discharge claims is more stringent than the 'severe and pervasive' standard for hostile work environment claims."). In other words, the Complaint provides nothing more than mere legal conclusions and a recitation of the elements in support of Plaintiff's constructive discharge claims. *See Iqbal*, 556 U.S. at 678–79. These claims should therefore be **DISMISSED**. *See McGraw*, 2023 WL

---

[8] It is worth noting that Plaintiff does not bring a claim for wrongful discharge in violation of public policy. (*See generally* Dkt. No. 1.)

10950864, at *11–12 (noting that Plaintiff's allegations that she was constructively discharged constituted legal conclusions insufficient to sustain her claim).

## CONCLUSION

For the reasons set forth above, the undersigned **RECOMMENDS** that Defendant's Partial Motion to Dismiss (Dkt. No. 6) should be **GRANTED IN PART AND DENIED IN PART**. The undersigned **RECOMMENDS** that the Court **DISMISS** Plaintiff's claims for: (1) disability discrimination based upon failure to engage in the interactive process and failure to accommodate in violation of the ADA and S.C. Code Ann. § 43-33-350; (2) retaliation based on requests for accommodation in violation of the ADA; and (3) constructive discharge in violation of Title VII and the SCHAL.[9] The undersigned further **RECOMMENDS** that Plaintiff's disability discrimination claim based upon disparate treatment and Plaintiff's retaliation claim based upon reports of discrimination should survive.[10]

**IT IS SO RECOMMENDED**.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

September 10, 2024
Charleston, South Carolina

---

[9] Because Plaintiff likely cannot cure the deficiencies in his Complaint by providing further factual information, the undersigned recommends that Plaintiff's claims be dismissed with prejudice.

[10] As noted, Plaintiff's retaliation claim based upon reports of discrimination is not at issue in Defendant's Partial Motion to Dismiss. (*See generally* Dkt. No. 6.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).